SAMUEL GARNSEY, *Adm'r, versus* JOHN GARDNER.

The assignment of a debt may be made by parol, or may be inferred from the conduct and acts of the parties. If made by one of the parties with a stranger acting as the agent of the other, it will be valid, if the acts of the stranger were authorized or subsequently ratified by his principal.

Where A sued B, and attached property, and C became receipter and surety for the payment of B's debt, and, on judgment being obtained, paid it to the officer having the execution, and A subsequently accepted the money paid; and afterwards C sued the judgment against B in A's name, obtained a new judgment, and levied the execution on real estate attached in the suit; — it was *held* that C had all the rights of an assignee, and was entitled to relief in equity against A, who had refused to convey to him the land levied upon.

BILL IN EQUITY, brought by the plaintiff as administrator of Robert R. Haskins, late of Bangor, against John Gardner, of Boston.

It appears by the bill of complaint, that, in 1833, Gardner recovered judgment against John Butterfield, of Milford, for $78,81, debt, and $17,48, costs, and Haskins, having been a receipter on the writ, and surety for the payment of the debt, paid the debt and costs recovered, to the officer having the execution, who paid it to Gardner's attorney. The officer delivered the execution to Haskins, it not having been discharged or annulled. In 1846, Haskins, in the name of Gardner, brought a suit on the judgment against Butterfield, attached real estate, obtained a new judgment and execution, and levied on the real estate attached, all at his own expense, but in Gardner's name, the amount of the levy being $219,41.

Haskins, in his life time, and after his decease, the plaintiff, as his administrator, called upon Gardner to convey by deed of quitclaim the land levied upon as aforesaid, but Gardner refused to do so.

Upon these facts, the bill claims that Gardner holds the land in trust for the estate of Haskins, and prays relief, and for an injunction to restrain Gardner from conveying the

land until further order of Court, or until the final decree in this case.

The defendant demurred to the complaint, on the ground that the complainant had not made out a case entitling him to relief in a Court of Equity.

*A. W. Paine,* for the plaintiff, argued that Haskins' money having been paid out for the debt, and accepted by the creditor, there was in law an equitable assignment to him of the demand. If a surety pays a debt, the security held by the creditor becomes in equity the property of the surety, his rights may be enforced in the name of the creditor, and courts will order the transfer of the *legal* title in accordance with the equitable one.

The case at bar is like that of one purchasing land by the money of another, where the title in equity is at once regarded as in the person who pays the money, and conveyance will be decreed. 2 Story on Eq., §§ 1201–1210. Also like a claim made against one, where another is ultimately liable, in which case equity will enforce the trust in favor of the person ultimately entitled to the benefit of it. §§ 1250, 1255, 1260.

The defendant, having received the money of Haskins by virtue of the latter becoming surety, cannot now retain the title to the land and the money too. On every principle of law and equity, the defendant holds the title in trust for the benefit of him who paid the money. *Buck* v. *Pike,* 2 Fairf., 1; *Russell* v. *Luce,* 2 Pick., 508; *Warren* v. *Ireland,* 29 Maine, 62.

In principle, it is a conveyance of land to one, upon a valuable consideration paid by another, where this Court has held that a trust is created. *Dwinel* v. *Veazie,* 36 Maine, 509; *Baker* v. *Vining,* 30 Maine, 121; *Buck* v. *Swazey,* 35 Maine, 41.

*A. Sanborn,* for the defendant, argued that the bill cannot be maintained—1, because the payment and receipt of the money are not set forth with sufficient particularity.

*Hobart* v. *Andrews*, 21 Pick., 526; *Walburn* v. *Ingilby*, 1 Mylne & Keene, 77.

2. Because, if Haskins was legally bound to pay, and did pay the debt and costs, he had a plain, full and adequate remedy at law, by action against Butterfield. 1 Story on Eq., 511; *Hogson* v. *Shaw*, 3 Mylne & Keene, 190.

3. Because Haskins had no legal or equitable interest in the judgment, *Gardner* v. *Butterfield*. It was not sold or assigned to him by Gardner, nor assigned by judgment of court. *Haskell* v. *Hilton*, 30 Maine, 419.

4. Because, if Haskins paid the debt of Butterfield to Gardner, as he alleges, it was extinguished, and could not be assigned. The suit on the judgment was groundless, and the levy void. Gardner has no title to the land, and does not hold it in trust for Haskins' estate. 1 Story, § 499, *b*, and notes.

5. Because, if Haskins was bound to pay, and did pay the debt, he is not *ipso facto* substituted for the original creditor, with the right to sue the judgment, and levy on Butterfield's land, and therefore the defendant does not hold the land in trust for him. 1 Story, § 493, and notes.

6. Because, the bill failing to show that Haskins was bound to pay the debt, he paid it voluntarily, and could·not maintain assumpsit against Butterfield for money paid, much less a bill in equity to compel Gardner to assign the debt to him, or to convey the land. 2 Greenl. on Ev., §§ 113, 114, and notes; *Windsor* v. *Savage*, 9 Met., 346; *Stephens* v. *Broadnax*, 5 All., 258.

The opinion of the Court was drawn up by

MAY, J.—In case of a levy upon real estate, it is provided by our R. S. of 1857, c. 76, § 14, that, "when the debt had been previously assigned, for a valuable consideration, the creditor named in the execution holds an estate levied on to satisfy it in trust for his assignee, who is entitled to a conveyance thereof which may be enforced by a bill in equity." This provision is but a reënactment of the R. S. of 1841,

c. 94, § 18. Jurisdiction is also conferred upon this Court as a Court of Equity, "for relief in cases of fraud, trusts, accident or mistake." R. S. of 1857, c. 77, § 8.

The principal question, therefore, which is raised by the demurrer in this case, is, whether Robert R. Haskins, the orator's intestate, became the assignee of the judgment recovered in the suit, *Gardner* v. *Butterfield*, as is alleged in the bill, so that, under the facts and circumstances therein stated, the said Gardner can be regarded in equity as holding the estate levied upon in trust for said intestate.

The bill charges, in substance, that Gardner, in the year 1833, sued out a writ of attachment against said Butterfield, and duly obtained judgment and execution therein; and that said Haskins, having at the time of the service of said writ, become a receipter to the officer, obligated and holden to pay the said execution as surety for said Butterfield, upon recovery of the judgment and issuing of execution as aforesaid, did pay the amount thereof to said officer in pursuance of his obligation, who, thereupon, delivered the execution to said Haskins as his own, the same being in no way discharged or annulled; that said officer paid the sum due thereon to said Gardner, or his attorney, who received the same; and that, afterwards, in the year 1846, the said Haskins having kept the execution as his own till that time, put the said judgment in suit in the name of said Gardner, and at his own expense prosecuted said action until he recovered a new judgment therein, in 1850, when he took out execution and caused the same to be levied on the real estate in controversy. The bill also alleges that the said Haskins in his life time, and since his death, the orator, as his administrator, requested the said Gardner to convey by deed of quitclaim to each of them, the legal estate in said premises, which the said Gardner then, and still refuses to do.

The demurrer admits the truth of all these allegations. It is true the bill does not set forth, *in totidem verbis*, the terms of the receipt, nor whether any of Butterfield's property

was attached on the original writ, but it does allege that the said Haskins *became a receipter, and obligated himself, as the surety of Butterfield, to pay the judgment upon certain conditions,* which are alleged to have happened. His liability, according to the bill, did not depend upon any demand for property attached; but simply upon the recovery of judgment and execution.

Such liability, existing as it did, not by virtue of any thing upon the face of the demand in suit, but being collateral to it, was not that of a surety, strictly speaking, and may, perhaps, more properly be regarded as that of a guarantor. It seems to have all the properties of a conditional guaranty. Haskins may be regarded as having paid it as such. He paid it to the officer, who paid it to the defendant or his attorney, to whom the original demand, as the bill further alleges, was entrusted for collection.

Whether a guarantor, by mere payment, can demand an assignment of the debt, has often been questioned. There are authorities both ways. Some writers regard the question now as not definitely settled. Parsons' Mer. Law, 69. The later cases deny the right, and Story, in his Equity, vol. 1, § 499, *b*, affirms that this is the law. But, notwithstanding such may be the law, we are satisfied, from the facts before us, that the arrangement between the officer and Haskins, at the time of the payment, was, that Haskins should have the benefit of the judgment and execution, with all the legal incidents connected therewith. The delivery of the execution by the officer to Haskins, *as his own, and as unsatisfied,* clearly manifests such an intention.

That an assignment of a debt may be by parol, as well as by deed, is well settled. Story's Eq., vol. 2, § 1047. So, too, it may be inferred from the conduct and acts of the parties. If made by one of the parties with a stranger, acting as the agent of the other, and the acts of such stranger are either authorized or subsequently ratified by his principal, such assignment will be valid. To hold otherwise would often make the law an instrument of injustice. The

arrangement, therefore, which was made between the officer and Haskins, if authorized or ratified, operated as a legal assignment of the judgment and execution.

Is there sufficient evidence, in the facts alleged in the bill, to show such authority or ratification? We think there is. The fact that the defendant, through his attorney, received the whole amount of his judgment; the absence of any claim by him upon the judgment or execution after the execution had been delivered to Haskins as his own; and the long silence of the defendant in relation to the whole matter, which continued until Haskins, some seventeen years after, had obtained a new judgment and execution, and satisfied them by a levy upon real estate, in our judgment, are sufficient evidence of such authority for, or of a subsequent ratification of the acts of the officer, especially when the defendant is uninjured thereby, having received, as he has, the full amount of his debt. An authority for, or a ratification of, the acts of an attorney, was inferred from facts somewhat similar, in the case of *Patten & ux.* v. *Fullerton,* 27 Maine, 58.

In this view of the case, it becomes immaterial whether Haskins was a receipter for property upon the writ, or, was merely a surety or guarantor of the debt. The assignment of the debt by the officer to him upon payment of the amount due, having been either authorized or ratified by the defendant, conferred upon the orator's intestate all the rights of an assignee, which are sufficient for the maintenance of this bill.

The orator, therefore, having brought his case within the purview of the statute, is entitled to the relief which he seeks and which the statute gives. The demurrer must be overruled, and the case sent back to the Court for the county of Penobscot, where the defendant can make further answer if he desires.                     *Demurrer overruled.*

TENNEY, C. J., APPLETON, CUTTING and KENT, JJ., concurred.