## CLARK et al. v. SIGUA IRON CO.

(Circuit Court of Appeals, Third Circuit.    June 1, 1897.)

EQUITABLE ASSIGNMENT—CORPORATIONS—UNPAID SUBSCRIPTIONS.

Defendants entered into a contract with the S. Co., by which they agreed to surrender certain bonds of the S. Co. held by them as collateral to its demand note in consideration of an agreement by the S. Co. to pursue certain stockholders indebted to it on subscriptions, and use every effort to collect from them, by litigation if necessary, which should be conducted by attorneys selected by defendants, any sums collected to be received by the S. Co. for defendants, and paid to them, and any judgment to be assigned to defendants on request; all sums received by defendants to be applied on the S. Co.'s note. *Held*, that this contract constituted an equitable assignment of the claims against the stockholders to defendants, and in an action by the S. Co. against defendants to recover a sum paid to them by one of the stockholders against whom judgment was obtained as money had and received to the use of the S. Co., a statement of such contract constituted a sufficient affidavit of defense.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Joseph S. Clark and Richard C. Dale, for plaintiffs in error.

George Tucker Bispham, for defendant in error.

Before ACHESON, Circuit Judge, and BUTLER and BUFFINGTON, District Judges.

BUFFINGTON, District Judge.    This case arises on a writ of error to the circuit court of the United States for the Eastern district of Pennsylvania, sued out by Edward W. Clark and others, defendants in a suit brought against them by the Sigua Iron Company.    That court made absolute a rule to enter judgment for want of a sufficient affidavit of defense, and its action in so doing is here assigned for error.    The statement of claim averred the plaintiff company on January 6, 1894, recovered judgment against F. F. Vandervort in the court of common pleas No. 3 of Allegheny county for $3,855.21, which judgment was subsequently affirmed by the supreme court of Pennsylvania (164 Pa. St. 572, 30 Atl. 491); that on February 4, 1894, the plaintiff company was placed in the hands of a receiver by the United States circuit court for the Eastern district of Pennsylvania; that on January 5, 1895, the defendants in the present suit received from Vandervort, for the use of the plaintiff, the amount of said judgment and interest; that "having so had and received the said moneys for the use of the plaintiff, the defendants became and are liable to pay the said moneys to the said plaintiff, with interest"; that demand for such payment was made before suit brought, and refused.    It will be noted that by the plaintiff's statement its right to recover is based upon the receipt by the defendants "for the use of the plaintiff" of the amount of its judgment against Vandervort, and that, having so received it, and refused to pay it over, a right of action accrued to the plaintiff.    It would, therefore, appear that the liability of defendant to pay arises from the averred fact that defendant received the moneys for the plaintiff's use, for, if they did not so receive it, no other grounds of legal or equitable liability are set

forth. In the affidavit of defense 'filed this averment is traversed in the most explicit language, to wit: "And the statement contained in the plaintiff's statement of claim that said money collected under said judgment and paid to the defendants was due and received by the defendants on behalf of the plaintiff is absolutely false." This explicit traverse placed in issue the question of fact upon which, by the plaintiff's only showing, its right to recover rested, and was in itself sufficient to prevent judgment.

It is said, however, that the foregoing traverse was merely the defendants' deduction or conclusion, based upon the written contract between the parties, a copy of which defendants filed with their affidavit. As the court below based its action upon the construction of the contract, we deem it proper this court should express its views upon that point as well. By the recitals of such contract, which was between the Sigua Iron Company, the plaintiff, and E. W. Clark & Co., the defendants, it appears that on its date, June 15, 1893, the defendants held $24,500 of the Sigua Iron Company's bonds as collateral security for the payment of $30,000 owing to them on that company's demand note. The company had claims aggregating $24,-500 against certain named shareholders in designated sums for unpaid capital stock, among others F. F. Vandervort, who owed $30 per share on 100 shares. Clark & Co. agreed to surrender the $24,-500 collateral bonds "upon the terms and conditions hereinafter set forth," which terms, as pertinent to the present question, were as follows:

"First. Messrs. E. W. Clark & Co. will release the aforesaid twenty-four thousand five hundred (24,500) dollars of bonds when and as the same are needed for sale or pledge by the Sigua Iron Company, the amounts realized from said sales or pledges to be deposited with Messrs. E. W. Clark & Co. to the credit of the Sigua Iron Company, to be held subject to be drawn out at will, from time to time, by the Sigua Iron Company on its check or checks. Second. The Sigua Iron Company agrees to pursue the aforesaid stockholders, to wit, Messrs. Greene, Vandervort, Berlin, and Loring, and use every effort to collect the amounts unpaid on the stock standing in their names respectively, and by litigation, if necessary. This litigation shall be placed in the hands of such attorneys as may be appointed for the purpose by Messrs. E. W. Clark & Co. Any sums collected by the company from these stockholders shall be received by the company for the benefit of Messrs. E. W. Clark & Co., and shall be paid to said Clark & Co. And any judgment which may be recovered against any or all of said stockholders shall, at the request of Messrs. E. W. Clark & Co., be assigned to them. Any sums of money realized by said Clark & Co. out of any such judgment or judgments, or any money collected by the company from the said stockholders, and paid over to said Clark & Co., shall be received by said Clark & Co. as part payment of the aforesaid note of thirty thousand (30,000) dollars."

The affidavit recites that by the contract the iron company assigned and transferred to the defendants its claim against Vandervort; the fact that the suit against him was instituted by the iron company for the benefit of the defendants under the terms of the contract, and that the money was collected. and paid over to Clark & Co. as their proper money; and that they expected to prove all these facts on the trial of the case. Assuming the averments of the affidavit are true,—and they must be so assumed upon a motion for judgment,— was the plaintiff entitled to judgment? In considering that question

it is to be observed that the general principles applicable to equitable assignments are clear, the difficulty being in the application of such principles to the varying facts of individual cases. To constitute a writing an assignment, no particular form of words is necessary. "The phraseology employed is not material provided the intent to transfer is manifested." Christmas v. Russell, 14 Wall. 84. "Any order, writing, or act which makes an appropriation of a fund, amounts to an equitable assignment of the fund. The reason is, that the fund being a matter not assignable at law, nor capable of manual possession, an appropriation of it is all that the nature of the case admits of, and therefore it is held good in a court of equity." Spain v. Hamilton's Adm'r, 1 Wall. 624. "It is certainly the tendency of all modern authorities to maintain the general doctrine, which may, indeed, be stated as a formula, that wherever a party has the power to do a thing (statute provisions being out of the way), and means to do it, the instrument he employs shall be so construed as to give effect to his intention. It is but the application of the old maxim, 'Interpretatio chartarum benigne facienda est, ut res magis valeat quam pereat;' 'quando res non valet ut ago, valeat quantum valere potest.'" Bond v. Bunting, 78 Pa. St. 218. "An equitable assignment is an agreement in the nature of a declaration of trust, which a chancellor, though deaf to the prayer of a volunteer, never hesitates to execute where it has been made on valuable, or even good, consideration." Nesmith v. Drum, 8 Watts & S. 10. "It leaves the legal ownership and consequent right of action in the assignor; and it has, therefore, been treated as a declaration of trust for the assignee, or an agreement that he shall receive the money to his own use; or, as the case may be, to the use of the persons beneficially concerned. Any binding appropriation of it to a particular use by any writing whatever is, consequently, an assignment, or, what is the same, a transfer, of the ownership." Watson v. Bagaley, 12 Pa. St. 167; Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439.

Turning, then, to a consideration of the paper in connection with the situation of the parties at the time it was drawn, we note that the facts of the case in hand are not those which characterized a number of cases where the debtor, without any additional consideration given, promised to pay or expressed an intention of paying a previous existing debt from money thereafter received from a specified source. Here a present, valuable consideration passed. In consideration of the iron company's covenants, Clark & Co. covenanted to surrender the $24,500 of bonds they held as security for their note. What did they receive in return? On plaintiff's contention, nothing save the iron company's general covenant to collect assets (which, by the recitals of the paper, were doubtful in character), and when collected apply the proceeds to defendant's debt if it chose to do so. If it refused to do so, then, so far as the money collected was concerned, the defendants were remediless, and were remitted to a suit for breach of contract against a company which, even at that time, by the statements of the contract, was procuring the released bonds "for sale or pledge." As the defendants upon their demand note already had a present right to subject all the

assets of the company, including these very claims, to process to enforce payment of its $30,000 indebtedness, it would follow—to adopt the plaintiff's construction of the paper—that the defendants, in substance, took nothing by the paper in lieu of the $24,500 of bonds they agreed to release. Testing such a construction by the standard of ordinary business prudence, it cannot reasonably be conceived that Clark & Co. gave up their bonds without acquiring possession, or the means of acquiring possession, of other equally valuable or tangible assets, but rather that both parties intended to make a particular appropriation of specific property in lieu of the to be surrendered bonds. It will be noted that for some reason the paper was explicit in the designation of its subject-matter. The names of the company's debtors, the nature and amount of the claims, were set forth in detail, and its provisions, whatever they were, extended to the whole amount of each individual claim. The company on its part covenanted, so far as its provisions relate to what was done in the Vandervort claim,—First, to pursue Vandervort by litigation, if necessary; secondly, that Clark & Co.'s attorneys should conduct such litigation; thirdly, that the judgment recovered should be assigned to Clark & Co. at their request; and, fourthly, that Clark & Co. should credit the money on the judgment realized upon plaintiff's note. It will be noticed that, so far as the claims collected by judgments were concerned, not a dollar of them was ever to come into the plaintiff's hands. This was, in substance, agreed to by specific provisions for a procedure in which money would not come into the iron company's hands, and that such was the intent of the parties is shown by the fact that provision was expressly made where the claim was collected without suit for receipt of the money by the company and payment of it to the defendants. Suit was instituted against Vandervort in the fall of 1893 by the iron company. Judgment was recovered on January 6, 1894, and by the terms of the agreement the plaintiff was then bound to assign the judgment to Clark & Co. The contract made no provision for the company to receive the money collected upon the judgment, but simply for the assignment of the judgment to Clark & Co. on request. It could not refuse to do so, for a court of chancery would have enforced compliance with its covenant obligation, and for such assignment it had already been compensated by Clark & Co.'s covenant to surrender the bonds. Such assignment was a mere formal duty, necessary, as against Vandervort, to clothe Clark & Co. with legal ownership, for the equitable ownership was already vested in them. As against Vandervort, the legal ownership and right of action had remained in the trustee, but when the right of action was merged in the judgment, and that, too, by the action of the attorneys of cestui que trust, the iron company was a mere dry trustee, whose sole remaining duty was to assign such judgment on request. With notice of this agreement, Vandervort could not thereafter have paid the money to the iron company, and the fact that the right to it had irrevocably passed from the iron company is one of the earmarks which stamp is as an equitable assignment. Such being the relation of the plaintiff to the judgment, and its duty to Clark & Co., it is

clear that the plaintiff was not relieved of its duty, or Clark & Co. deprived of their rights, by the subsequent appointment of a receiver. This judgment was not an asset of the company, and, if the company had no right to it, it goes without saying the appointment of a receiver created none.

Upon full and careful consideration, we are of opinion the affidavit of defense was sufficient, and the court erred in entering judgment. That judgment is therefore reversed, and the cause remanded for further proceedings.