(February 5, 1912.)

JOHN PORTER, Respondent, v. THE TITLE GUARANTY & SURETY COMPANY, a Corporation, Appellant.

[121 Pac. 548.]

UNITED STATES GOVERNMENT — CLAIM AGAINST — ASSIGNMENT AND TRANSFER—CLAIM AGAINST RAILROAD—REBATES—ASSIGNMENT— RIGHT OF COLLECTION.

(Syllabus by the court.)

1. Under the provisions of sec. 3477 of the Rev. Stats. of the United States, claims against the United States government cannot be transferred or assigned unless such assignment is made in accordance with the provisions of such statute, and all pretended transfers or assignments of such claims or any part thereof, unless made in accordance with the provisions of the statute, are declared null and void.

2. Where M. & P. entered into a contract with the government of the United States for the construction of canals and ditches and

other works to be used for the purpose of reclaiming public lands of the United States, and in such agreement it is provided that railroad transportation companies will allow and pay certain rebates of freight, paid by such contractors in transporting supplies and material used in the construction of such works, the collection and payment of such rebates will depend upon the conditions of the agreement made by the railroad company and the government, and the payment of such rebates is not thereby made an obligation of the government, and the contractors have no claim against the government for such rebates.

3. Where M. & P. have an acknowledged and admitted debt due them from a railroad company for rebates upon freight, and M. & P. assign and transfer said claim to T. G. & S. Co. for valuable consideration, prior to the time notice of garnishment is served upon the railroad company in an action of J. P. against M. & P., such debt becomes a debt of the railroad company to T. G. & S. Co., and is not subject to garnishment in an action of J. P. against M. & P.

4. In the absence of statutory provisions prescribing the mode of assignment, no particular method or form is necessary to effect a valid assignment of property, claims or debts, so as to defeat the garnishment proceedings by a creditor of assignor; if the intent of the party to effect an assignment be clearly established, it is sufficient, and the assignment may be in the form of an agreement or order or any other instrument which the parties may see fit to use for the purpose.

5. Where M. & P. have a claim against a railroad company for rebates, and assign and transfer such claim to T. G. & S. Co., and deliver the freight-bills to T. G. & S. Co., and thereafter W. S. Porter, a member of M. & P., procures the possession of said freight-bills by misrepresentations and delivers the same to J. P., who attempts to collect the rebates due thereon from the railroad company by garnishment proceeding, after such transfer and assignment, the fact that such freight-bills were secured by W. S. Porter through misrepresentations could in no way affect or defeat the right of T. G. & S. Co. to recover the debt evidenced by such freight-bills.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

An action for debt in which notice of garnishment is served. Answer filed by third party claiming interest in the fund; demurrer to answer; demurrer overruled. *Reversed.*

Hawley, Puckett & Hawley, and B. F. Neal, for Appellant.

"In the absence of statutory provisions prescribing the mode of assignment, no particular mode or form is necessary to effect a valid assignment of property, claims or debts so as to defeat the garnishment proceedings by the creditor of the assignor." (20 Cyc. 1014, 1015; Page on Contracts, sec. 1277.)

"Where the principal defendant has made a valid assignment of the garnishee's indebtedness, or a conveyance of the property in his possession belonging to such defendant, before the service of the summons on the garnishee, the latter cannot be charged on account of such debt or property." (20 Cyc. 1012; *Cunningham v. Bank,* 13 Ida. 167, 121 Am. St. 257, 88 Pac. 975, 10 L. R. A., N. S., 706; *Van Ness v. McLeod,* 3 Ida. 439, 31 Pac. 798; *Handley v. Pfeister,* 39 Cal. 283, 2 Am. Rep. 449; *Calumet Paper Co. v. Haskell Show etc. Co.,* 144 Mo. 331, 66 Am. St. 425, 45 S. W. 1115; *Wilson v. Harris,* 21 Mont. 374, 54 Pac. 46.)

In the absence of fraud, only such demands can be subjected to the process of garnishment as defendant in his own name could recover of the garnishee in an action of debt. (20 Cyc. 1000; *Cunningham v. Bank of Nampa, supra; Van Ness v. McLeod, supra; Hassie v. God Is With Us Congregation,* 35 Cal. 378; *McPherson v. Atlantic etc. Ry.,* 66 Mo. 103.)

"The fact that benefits assigned have not yet accrued and that the assignor has not performed the contract on his part when he makes the assignment does not prevent the assignment from being valid, at least in equity." (Page on Contracts, sec. 1260, and cases; *Warren v. Bank,* 149 Ill. 9, 38 N. E. 122, 25 L. R. A. 746; *State v. Williamson,* 118 Mo. 146, 40 Am. St. 358, 23 S. W. 1054, 21 L. R. A. 827; *McFarland v. Mfg. Co.,* 53 N. J. Eq. 649, 51 Am. St. 647, 33 Atl. 962; *National Bank v. Fink,* 86 Tex. 303, 40 Am. St. 833, 24 S. W. 256; *Stevenson v. Kyle,* 42 W. Va. 229, 57 Am. St. 854, 24 S. E. 886; *Chamberlin v. Gilman,* 10 Colo. 94, 14 Pac. 107.)

Money due, commonly called credits, is personal property, and is the subject of intervention in a proper case. (*Potlatch*

*Lumber Co. v. Runkel,* 16 Ida. 192, 18 Ann. Cas. 591, 101 Pac. 396, 23 L. R. A., N. S., 536.)

The right to subrogation of a surety under such circumstances as are shown in this record is well settled by the authorities. (37 Cyc. 363, 369; *Wilson v. Wilson,* 6 Ida. 597, 57 Pac. 708.)

Paris Martin, for Respondent.

The assignment by the firm of Monarch & Porter to T. G. & S. Co., as alleged by the appellant company herein, of an interest in the contract of July 8, 1905, is absolutely null and void. (*Spofford v. Kirk,* 97 U. S. 484, 24 L. ed. 1032; *St. Paul & Duluth Ry. Co. v. United States,* 112 U. S. 733, 5 Sup. Ct. 366, 28 L. ed. 861; *Butler v. Goreley,* 146 U. S. 303, 13 Sup. Ct. 84, 36 L. ed. 981; *Hager v. Swayne,* 149 U. S. 242, 13 Sup. Ct. 841, 37 L. ed. 719; *United States v. Gillis,* 95 U. S. 407, 24 L. ed. 503; *Becker v. Sweitzer,* 15 Minn. 346 (427).)

Regarding the nonassignability of this class of cases, the right to choose the party or principal with whom we shall become associated in social and business relations has always been regarded as an important factor. (*Tifton, T. & G. Ry. Co. v. Redgood,* 116 Ga. 945, 43 S. E. 257, and cases cited.)

The doctrine of subrogation cannot be invoked by the appellant bonding company, as this, in effect, would be to subrogate a claim against itself. (*T. G. & T. Co. v. Crane,* 219 U. S. 24, 31 Sup. Ct. 140, 55 L. ed. 72; *United States v. Surety Co.,* 200 U. S. 197, 26 Sup. Ct. 168, 50 L. ed. 437.)

The matters alleged in appellant's petition in intervention amounted to nothing more than a possible right in the nature of an agreement between appellant company and Monarch & Porter, a mere chose in action, and enforceable only if valid in money damages. (*Remington Typewriting Co. v. McArthur,* 145 Iowa, 57, 123 N. W. 760; Pomeroy, Civil Remedies, 4th ed., sec. 317.)

STEWART, C. J.—On the 27th day of June, 1908, John Porter, the respondent in this case, recovered judgment in

the district court of Ada county, Idaho, against John W. Monarch and W. S. Porter for the sum of $17,700, and on the 15th day of March, 1909, there was due and owing upon such judgment the sum of $14,700; and upon said latter date the respondent, John Porter, caused execution to be issued upon said judgment and notice of garnishment to be served upon the Oregon Short Line R. Co., the supposed debtor to Monarch & Porter, judgment defendants. On December 29, 1909, the Oregon Short Line R. Co. filed its answer to the notice of garnishment and admitted its indebtedness to Monarch & Porter in the sum of $1,013.47. On the 31st day of March, 1910, the Title Guaranty & Surety Co., appellant herein, filed in said action a petition in intervention, alleging a right, title and interest in and to the fund admitted in the answer of the Oregon Short Line R. Co. to be due to Monarch & Porter. An amended petition in intervention was filed by the appellant, the Title Guaranty & Surety Co. To this amended petition a general demurrer was filed and thereafter sustained, and the appellant, the Title Guaranty & Surety Co., declining to plead further, the trial court rendered judgment that the Title Guaranty & Surety Co. had shown no proper claim to the said fund of $1,013.47, or any part thereof; and also rendered judgment in favor of John Porter against the Oregon Short Line R. Co. for the amount of said fund, to wit, $1,013.47. The Title Guaranty & Surety Co. appeals from said judgment, and the question presented to this court for determination is, whether the petition in intervention contains allegations sufficient to show that the appellant has a right or title to or interest in the fund admitted to be due Monarch & Porter from the Oregon Short Line R. Co., or whether said fund belonged to John Porter at the time said petition in intervention was presented and filed.

The respondent, John Porter, contends that the claim made by Monarch & Porter against the Oregon Short Line R. Co. for rebates, which constitute the fund now in controversy, was a claim upon the United States, and for that reason could not be transferred or assigned, and that no authority for receiving payment of such claim, or any part thereof, could be

given, and that all powers of attorney, orders or authorities for receiving payment of such claim were null and void, unless such transfer or assignment was freely made and executed in accordance with the conditions of sec. 3477 of the Rev. Stats. of the United States, adopted by an act of Congress June 22, 1874.

The appellant contends that the fund which is involved in this case did not arise out of and never was a claim against the United States, and that such claim arose out of a contract made between the United States and the Oregon Short Line R. Co., in which the railroad company agreed to pay certain rebates upon freight paid upon supplies, etc., transported over the line of the Oregon Short Line R. Co., and used in construction work under a contract made by the United States and Monarch & Porter; and that Monarch & Porter transferred all their interest in or to said fund to the appellant herein by written transfer, and that in fact the appellant paid the original freight under arrangements with Monarch & Porter, upon which the rebate was paid, and that under a contract with Monarch & Porter the appellant, by reason of having executed a bond guaranteeing the performance of a contract between Monarch & Porter and the United States government, and upon which Monarch & Porter defaulted, and the appellant as such surety advanced funds and provided supplies and necessaries for carrying out said contract, thereby became subrogated to the rights of Monarch & Porter to collect the amount due upon their said contract with the government, and their right to collect for rebates upon freight, under the contract made between the government and the Oregon Short Line R. Co.

We think it must be conceded in this case that under sec. 3477 of the Rev. Stats. of the United States and the construction placed upon this section by the decisions of the United States supreme court, that if the amount due Monarch & Porter for rebates upon freight carried by the Oregon Short Line R. Co. under arrangement or contract with the United States government, and involved in this case, was due from the government, or was a claim against the United

States, then the petition in intervention in this case fails to state a cause of action, and the demurrer should be sustained, for the reason that the assignments made of said claim by Monarch & Porter were not executed in the manner provided by said section, and that under the provisions of said section said claim was not transferred from Monarch & Porter to the appellant, and that the appellant has no interest or title or right to such fund. Many cases may be cited in support of this contention, among which are the following: *Spofford v. Kirk,* 97 U. S. 486, 24 L. ed. 1032; *St. Paul & Duluth R. R. Co. v. United States,* 112 U. S. 733, 5 Sup. Ct. 366, 28 L. ed. 861; *United States v. Gillis,* 95 U. S. 407, 24 L. ed. 503.

In the case of *National Bank of Commerce v. Downie,* 218 U. S. 345, 20 Ann. Cas. 1116, 31 Sup. Ct. 89, 54 L. ed. 1065, in discussing this section of the statute the supreme court, through Justice Harlan, reviews the various decisions of the supreme court of the United States in construing this section, and says: "Turning to sec. 3477, we find Congress had in mind not only all transfers and assignments of any claim on the United States, or part of a claim or any interest therein, whether the transfer or assignment be absolute or unconditional, and whatever was the consideration of the transfer or assignment, but all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof. All such transfers, assignments, powers of attorney, order, or authorities are declared to be 'absolutely null and void' except there be a compliance with the conditions fully set out in the statute. None of those conditions are complied with in these cases."

If, however, the claim of Monarch & Porter to the fund involved in this case was a claim against the Oregon Short Line R. Co. and not against the government of the United States, then in that case the statute referred to would have no application to the transfer or assignment of said claim, and the sufficiency of such transfer or assignment would not be in any way controlled or regulated by the provisions of such statute.

This leads us now to a consideration of the question as to whether the allegations contained in the petition in intervention show that the claim of Monarch & Porter for rebates was a claim against the United States or a claim against the Oregon Short Line R. Co. It is alleged in the petition that on the 27th day of July, 1905, the appellants, at the request of Monarch & Porter, executed as security the bond of Monarch & Porter to the United States, guaranteeing that Monarch & Porter would do certain construction work upon what was known as the Minidoka project (this was a reclamation project undertaken by the United States in the state of Idaho) ; that in February, 1906, Monarch & Porter became embarrassed and made application to this appellant for financial assistance in carrying forward to completion their contract, and on the 12th day of March, 1906, an agreement was entered into between Monarch & Porter and this appellant with reference to certain indebtedness owed by Monarch & Porter and for the execution of mortgages upon property of Monarch & Porter, and the payment of certain debts by the appellant, and making provision for the appellant to take charge of the construction under the Monarch & Porter contract with the United States government, and to furnish means for carrying on the Monarch & Porter contracts, and the paying of expenses attending such construction work; and in this agreement, among other things, it was provided that Monarch & Porter would execute and deliver powers of attorney as might be required for the purpose of enabling the appellant to collect and receive any, each and all drafts or warrants for money due on estimates for work done on the above-mentioned project, including final estimates, and that all mail from the Department of the Interior or other departments of the United States governing the transmission of the before-mentioned drafts should be sent directly to the appellant at its office in Scranton, Pa., or elsewhere as the second party may hereafter direct. In subd. 8 of said contract it is specifically agreed between Monarch & Porter and the appellant that "it is understood that second party is to pay all railroad freights hereafter accruing in the prosecution of said·work, also all

other charges and costs incident to the delivery of hay, grain and other feed, also for the delivery of such goods as shall be maintained in the commissary department of Monarch & Porter in connection with said work; and shall hereafter collect all freight rebates due under the terms of said original contract of Monarch & Porter with the United States, on and after March 1, 1906.''

It was also alleged in the petition that all the original freight-bills covering freight paid after March 12, 1906, in carrying out the contract with Monarch & Porter, and all of the rebates accruing thereon, except only the rebates in controversy in this action, were collected by the defendant and by it used for the purpose of reducing the total indebtedness of Monarch & Porter to itself, both as to rebates received prior to the completion of the construction work and as to rebates received since the completion thereof, and that all the parties to the contract treated said original freight-bills and the rebates accruing as the property of the defendant as specified in the contract of March 12, 1906; that in the month of December, 1906, Monarch & Porter delivered to the defendant the original freight-bills on account of which the freight rebates in controversy in this action accrued, and that the defendant, appellant here, figured and checked the rebates accrued thereon, and *sent the said original freight-bills and the accompanying freight rebate check lists to Mr. Cass, the freight traffic checking agent of the United States,* and the said freight rebate checking agent approved said freight rebates and duly returned said original bills to this defendant and to its agents and employees; that thereafter, and in January, 1907, the defendant, W. S. Porter, represented to the defendant that he desired to borrow said original freight-bills and rebate checking list attached for the purpose of figuring and checking certain rebates on freight-bills paid prior to March 12, 1906, the rebates on which the firm of Monarch & Porter were of right entitled to, and represented that he would return said original bills and freight rebate checking list to the defendant so soon as he could complete the checking up of his own freight rebates aforesaid, and

would at most redeliver said original freight-bills to this defendant within two or three days; that the defendant frequently made demands on W. S. Porter, and he refused, and still refuses, to deliver said freight-bills to the defendant. Then follow allegations that the freight-bills and rebate checks were procured for the purpose of cheating and wronging and defrauding the defendant out of the amount involved in this case, to wit, $1,013.47, and that the acts were done by the said William S. Porter at the suggestion and on the advice and for the use of plaintiff, respondent in this case; and from information and belief it is alleged that William S. Porter, during the year 1909, delivered the original freight-bills to John Porter, the respondent, and that he sent the original freight-bills to the Oregon Short Line R. Co., and that the same are in the possession of the garnishee; that such freight-bills were procured through fraud and with intent to cheat, wrong and defraud the defendant; that they were sent to the garnishee, and that the respondent well knew the facts that the original freight-bills on account of which said rebates in controversy accrued had been delivered to the defendant by Monarch & Porter, and that possession had been wrongfully obtained by William S. Porter, a member of the firm of Monarch & Porter, and the son of the plaintiff herein.

Then follows the cross-complaint, which alleges the application of Monarch & Porter to the appellant for the purpose of having and procuring the defendant to execute and deliver to the United States a bond as surety for Monarch & Porter, guaranteeing their faithful performance of their contract made with the United States government in their reclamation contract. Then follow allegations that the bond was executed, and in order to protect itself the appellant expended large sums of money in carrying out said contract, and that all freight-bills on account of which rebates in controversy accrued were duly assigned and delivered by the firm of Monarch & Porter to this defendant, and that William S. Porter wrongfully and unlawfully and with intent to cheat, wrong and defraud the appellant, obtained possession of said freight-bills and refused to and has not returned them to the

defendant, and that the defendant is entitled to the amount
due on said freight-bills; that said freight-bills were procured
by false representations at the request and for the use of the
respondent, John Porter, and for the purpose of cheating and
defrauding this defendant; that by reason thereof the defend-
ant is entitled to be subrogated in the premises to all the
rights of Monarch & Porter.

Under these allegations of the petition in intervention and
cross-complaint it clearly appears that the rebates to be paid
by the Oregon Short Line under its arrangement or contract
with the United States government were to be paid to con-
tractors who used the road for freight transportation. The
United States, so far as the allegations in the petition and
cross-complaint, had no connection whatever with the pay-
ment of this freight other than to make it a condition or
requirement under the contract that the government made
with the railroad company, and that all the government had
to do or did do in the particular case now being considered,
so far as the allegations of the pleadings are concerned, was
that the freight-bills with the accompanying freight rebate
check list were sent to Mr. Cass, the freight traffic checking
agent of the United States, and the said freight rebate check-
ing agent approved said freight rebates and duly returned
said original freight-bills to the defendant and to its agents
and employees. This allegation clearly shows that the only
supervision or connection of the government with the pay-
ment of freight rebates was the checking up of the list, and
no doubt this was for the purpose of having information and
facts before the proper officials so that the government could
require the railroad company to perform its part of the agree-
ment with the government, and pay freight rebates as agreed;
the government parted with nothing; they paid no part of
these rebates; the rebates were simply sums returned to the
shipper by the railroad company after the full freight had
been paid by the contractor, and in this case all freight after
March 12, 1906, was paid by the appellant, and in the con-
tract made between Monarch & Porter and the appellant on
March 12, 1906, in subd. 8, it was agreed that the appellant

"shall hereafter collect all freight rebates due under the terms of said original contract of Monarch & Porter with the United States on and after March 1, 1906." It will thus be seen that by reason of this contract, and the furnishing of money and funds to carry out and complete the Monarch & Porter contracts, they were to collect all payments made by the government to Monarch & Porter on said contract, *and all freight rebates,* and it would seem from this provision that Monarch & Porter by this instrument transferred and assigned to the appellant company the right to collect and apply all freight rebates paid after March 12, 1906, upon the indebtedness of Monarch & Porter to the appellant company. We think this contract is so plain and precise that there can be no contention whatever as to the intent and purposes of the contracting parties. Monarch & Porter specifically surrendered all right to collect either upon the contract for moneys due for the contract work or upon rebates allowed by the railroad company by reason of the patronage of Monarch & Porter, and transferred to the appellant all right and title to all money due them. Now, the transfer thus alleged was not a transfer made under the provisions of sec. 3477 of the Rev. Stats. of the United States, but was an assignment by agreement of both parties of the garnishee's indebtedness. It is shown by the pleadings in this case that the Oregon Short Line R. Co. filed an answer in which it was admitted that they owed $1,013,47 to somebody. Now, if that debt was owed by the Oregon Short Line R. Co. to Monarch & Porter, and Monarch & Porter assigned and transferred such indebtedness to the appellant for a valuable consideration, prior to the time the notice of garnishment was served upon the railroad company, then it ceased to be a debt from the Oregon Short Line R. Co. to Monarch & Porter and the debt became a debt of the Oregon Short Line R. Co. to the appellant, and if that were true, then it was not subject to garnishment in an action of John Porter against Monarch & Porter, and the Oregon Short Line R. Co. could not be charged on account of a debt due from the Oregon Short Line R. Co. to Monarch & Porter. (*Van Ness v. McCleod,* 3 Ida. 439, 31 Pac. 798; *Cunningham v. Bank,*

3 Ida. 167, 121 Am. St. 257, 88 Pac. 975, 10 L. R. A., N. S., 706; *Handley v. Pfeister,* 39 Cal. 283, 2 Am. Rep. 449; *Calumet Paper Co. v. Haskell Show Printing Co.,* 144 Mo. 331, 66 Am. St. 425, 45 S. W. 1115; *Wilson v. Harris,* 21 Mont. 374, 54 Pac. 46; 20 Cyc. 1000.)

In the absence of statutory provisions prescribing the mode of assignment, no particular method or form is necessary to effect a valid assignment of property, claims or debts, so as to defeat the garnishment proceedings by the creditor or assignor. If the intent of the party to effect an assignment be clearly established, it is sufficient, and the assignment may be in the form of an agreement or order or any other instrument which the parties may see fit to use for the purpose. (20 Cyc. 1014, 1015; Page on Contracts, sec. 1277; *Clark v. Sigua Iron Co.,* 81 Fed. 310, 26 C. C. A. 423; *Goodfellows v. Campbell,* 17 R. I. 402, 22 Atl. 307, 13 L. R. A. 601; *Baillie v. Stephenson,* 95 Wis. 500, 70 N. W. 660.)

If this were a contest between Monarch & Porter and the appellant as to which was entitled to recover from the Oregon Short Line R. Co., there certainly could be no question as to which should recover.

The contract made between the appellant and the respondent, dated March 12, 1906, provides beyond any question of doubt the assignment of all freight rebates as they accrued, and it is alleged in the complaint that Monarch & Porter were indebted to the appellant in a large sum of money in excess of the amount of such rebates in controversy, and that the appellant had paid the freight-bills upon which such rebates were earned, and such statement of facts clearly shows that the rebates in controversy were due and belonging to the appellant and not Monarch & Porter, and that Monarch & Porter transferred and assigned to the appellant all their right, title and interest in and to the same, and that at the time the notice of garnishment was served upon the railroad company Monarch & Porter had no right, title or interest in or to the fund involved in this case, which was subject to execution, attachment or garnishment. (20 Cyc. 1000; *Cunningham v. Bank,* 13 Ida. 167, 121 Am. St. 257, 88 Pac. 975,

10 L. R. A., N. S., 706; *Van Ness v. McCleod*, 3 Ida. 439, 31 Pac. 798; *Hassie v. God Is With Us Congregation*, 35 Cal. 378; *McPherson v. Atlantic etc. Ry. Co.*, 66 Mo. 103; *Buchanan v. A. B. Spencer L. Co.* (Tex. Civ. App.), 134 S. W. 292.)

It is also alleged in the complaint that prior to the time appellant executed the bond signed by it as surety for Monarch & Porter to the United States, Monarch & Porter entered into an agreement with the appellant, and that in such agreement the following provision appears: "And we do further agree in the event of any breach or default on our part in any of the provisions of the contract hereinbefore mentioned, that The Title Guaranty & Trust Company of Scranton, Penna., as surety upon the aforesaid bond shall be subrogated to all our rights and properties as principal in said contract, and that deferred payments and any and all moneys and properties that may be due and payable to us at the time of such breach or default or that may thereafter become due and payable to us on account of said contract shall be credited upon any claim that may be made upon The Title Guaranty & Trust Company of Scranton, Penna., under the bond above mentioned."

It is also alleged that Monarch & Porter were in default upon the contract, and that the appellant was compelled to take charge of the construction work and advance funds and pay bills, and that in carrying out the contract of Monarch & Porter they were authorized to collect and receive all payments due and rebates upon freight, etc., and that these contracts were made prior to the time the respondent served notice of garnishment on the Oregon Short Line R. Co. Under this agreement of Monarch & Porter the appellant company were subrogated to the rights and property and interests of Monarch & Porter to all rebates upon freight paid after the contract was made, and the appellant was fully authorized to collect the same and credit the amount upon appellant's account against Monarch & Porter. (*Clark v. Sigua Iron Co.*, 81 Fed. 310, 26 C. C. A. 423; *Allen v. Aetna Life Ins. Co.*, 145 Fed. 881, 76 C. C. A. 265, 7 L. R. A., N. S., 958; 37 Cyc. 406.)

It is alleged in the petition in intervention and cross-complaint that after the freight-bills upon which rebates were to be paid had been checked by Mr. Cass, the freight traffic checking agent of the United States, they were returned to the appellant, and that William S. Porter made false representations to them and they turned the freight-bills over to him for the purpose of making certain checkings of such rebates, and that he has refused to return the same, and delivered the same to the respondent, who delivered them to the Oregon Short Line R. Co.; that such freight-bills were procured through fraud and with intent to cheat, wrong and defraud the defendant. Whether the freight-bills were secured by misrepresentations would in no way affect or defeat the right of the appellant to recover the debt evidenced by such freight-bills, if it be shown by proof that the right to collect such funds was assigned and transferred by Monarch & Porter to the appellant prior to the time the notice of garnishment was served upon the railroad company. In other words, if Monarch & Porter parted with their right and title to the fund now in controversy; and transferred the same to the appellant for a valuable consideration, and such transfer was made before the notice of garnishment was served, then the appellant is entitled to such fund, and the appellant's right to recover such fund could not be controlled by the fact that the freight-bills themselves were obtained from the appellant and delivered to the respondent John Porter.

We are satisfied in this case that the petition in intervention and the cross-complaint states a cause of action, and that the demurrer filed in the trial court to the same should be overruled. The judgment in this case is *reversed,* and the trial court is directed to overrule the demurrer filed to the petition in intervention and the cross-complaint. Costs are awarded to appellant.

Ailshie and Sullivan, JJ., concur.