No. 79-73

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE EX REL. DONALD STEWART, JR.,

Petitioner,

vs.

DISTRICT COURT OF THE THIRTEENTH
JUDICIAL DISTRICT et al.,

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioner:

D. Michael Eakin, Hardin, Montana

For Respondents:

James E. Seykora, County Attorney, Hardin, Montana

Submitted: March 3, 1980

Decided: APR 1 - 1980

Filed: APR 1 1980

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is a petition for a writ of prohibition, supervisory control, or other appropriate relief in the dissolution of a marriage between members of the Crow Tribe. Respondent filed a memorandum brief opposing the petition, and upon receiving a reply brief from petitioner, we assume jurisdiction for decisional purposes without oral argument.

Petitioner Donald Stewart filed a divorce action against Tana Cordelia Stewart in the Tribal Court in August 1979, requesting custody of the couple's two children, Donald, age 3, and Oli-Ann, age 2. There is no showing of any service of said action upon Tana nor any indication that anything occurred following petitioner's complaint. The petitioner sets forth that the Crow Tribe never ceded jurisdiction to the State of Montana but has its own divorce code adopted by the Tribe July 8, 1978.

In October 1979 Tana filed a divorce action in the District Court of the Thirteenth Judicial District, asking for custody of the two children and $150 per month child support. A hearing was held on the matter before the Honorable Diane Barz, who ordered that care, custody and control of the couple's children be given to Tana during pendency of the action, that a 1977 Chevrolet truck belonging to Tana be returned to her, and that petitioner pay $150 per month support during pendency of the action.

We note that both petitioner Donald and his wife Tana are enrolled members of the Crow Tribe, as are their children, that they live at Crow Agency, Montana, within the exterior boundaries of the reservation, and that both parties are employees of the Crow Tribe.

Donald filed this petition promptly after his wife filed her divorce action and after the District Court refused to dismiss Tana's action for lack of subject matter and personal jurisdiction. On October 26, 1979, the District Court denied petitioner's motion to dismiss and assumed jurisdiction over the dissolution of the marriage.

Petitioner alleges he has no speedy, adequate remedy at law, that he is faced with two separate actions, and that an appeal from the ruling of the District Court does not offer the petitioner an adequate remedy to avoid duplicitous actions. In addition, petitioner notes that there is a real possibility of having conflicting custody decrees, thereby subjecting the children to continued custody litigation.

Tana argues that although the Crow Tribe does have a Law and Order Code covering domestic relations, that code was not approved by the Secretary of Interior and is not valid. She appears to rely on an ordinance adopted in 1953 by the Crow Tribe that gave jurisdiction to the State of Montana. That ordinance was approved by the Secretary of Interior.

The issue before us is whether the Tribal Court is currently exercising jurisdiction or has exercised jurisdiction in such a manner as to preempt state jurisdiction for members of the Crow Tribe living within the exterior boundaries of the Crow Reservation.

Before considering the above issue, we must dispose of the argument that because the 1978 Crow Uniform Divorce Act was not signed by the Secretary of Interior, the Act is not effective. We find on the basis of a letter of the Solicitor for the Department of Interior dated October 13, 1976, that no approval is necessary. The Solicitor stated:

-3-

"We recommend that no action be taken either to approve or disapprove of the other three Crow Ordinances. . . since the Crow Tribal Constitution does not require their approval by the Department for them to become effective. Departmental action, accordingly, either way would be a gratuitous act without legal significance. Our determination that no approval is required would not, of course, foreclose the Department from taking a position in any subsequent litigation challenging the validity of these ordinances. We should evaluate each such lawsuit on a case-by-case basis, and might decide to support tribal authority in the absence of Departmental approval of these ordinances." (Emphasis supplied.) Memorandum of Solicitor to Secretary of Department of Interior, October 13, 1976, p. 2.

We note that the District Court in its brief cited 25 C.F.R. §11.1, as requiring approval by the Department of Interior. Such approval is not required once a tribe has enacted a law and order code to replace the C.F.R. provisions. 25 C.F.R. 11.1(d). The Crow Tribe has adopted a comprehensive tribal code and, therefore, is not governed by the provisions of 25 C.F.R. §11. The Solicitor noted concerning secretarial approval, ". . . However, that Section [25 C.F.R. 11.1(e)] in our view applies only to modifications of the C.F.R code (while the Department continues to administer a C.F.R. 'Court of Indian Offenses') and does not bar the tribe from exercising its governmental power to adopt a separate code and to establish a tribal court without Secretarial consent." Memorandum of Solicitor, supra, p. 6, footnote 8.

Here, the provisions relied on by the District Court questioning the validity of the tribal code are inapplicable to the Crow Tribe. The Crow Tribal Code, being found duly enacted, gives the Crow Tribal Court exclusive jurisdiction over the dissolution of marriage actions between members residing within the exterior boundaries of the reservation.

Having so found here, unlike our finding in Larrivee v. Morigeau (1979), ____ Mont. ____, 602 P.2d 563, 36 St.Rep. 1798, under the principles of comity we should abstain and leave to the Tribal Court the decisional task of divorce matters between tribal members of the Crow Tribe. In so doing, we should reduce the "inter-governmental friction" likening the "competing interests" of the State and the tribes to a "Pullman type abstension situation." Railroad Comm'n v. Pullman Co. (1941), 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. See also, Fisher v. District Court (1976), 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106.

This Court in State ex rel. Iron Bear v. Dist. Ct. (1973), 162 Mont. 335, 512 P.2d 1292, held:

> "Before a District Court can assume jurisdiction in any matter submitted to it, it must find subject matter jurisdiction by determining: (1) whether federal treaties and statutes applicable have preempted state jurisdiction; (2) whether the exercise of state jurisdiction would interfere with reservation self-government; and (3) whether the Tribal Court is currently exercising jurisdiction or has exercised jurisdiction in such a manner as to preempt state jurisdiction." 162 Mont. at 346, 512 P.2d at 1299.

It would appear from the material submitted that the Tribal Court, since the adoption of 1978 Crow Uniform Divorce Act, is exercising exclusive jurisdiction over its tribal members living on the reservation. This being the case, we find that Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251, is controlling. The Court held in Williams: ". . . to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." 358 U.S. at 223, 79 S.Ct. at 272, 3 L.Ed.2d at 255.

-5-

For the above-stated reasons and after a careful consideration of the applicable law, we hold that prohibition is the proper remedy in this case and we order that the District Court dismiss the action for dissolution, Cause No. DR-79-114, entitled "In Re the Marriage of Tana Cordelia Stewart and Donald Stewart, Jr." In so doing, we hold this ruling is limited in effect to the Crow Indian Reservation.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices