No. 82-22

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

VERLIN F. WIPPERT and LORETTA L. WIPPERT,

Plaintiff and Appellant,

vs.

THE BLACKFEET TRIBE OF THE BLACKFEET
INDIAN RESERVATION, et al.,

Defendants and Respondents.

---

Appeal from:   District Court of the Ninth Judicial District,
In and for the County of Glacier
Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

For Appellant:

Frisbee, Moore & Stufft, Cut Bank, Montana
Selden Frisbee argued, Cut Bank, Montana

For Respondents:

Werner, Nelson & Epstein, Cut Bank, Montana
James Nelson argued, Cut Bank, Montana
Cannon, Parish & Sheehy,
Ed Sheehy argued, Helena, Montana

---

Submitted:  May 10, 1982

Decided:  December 1, 1982

Filed: DEC 1 1982

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The Wipperts appeal a Glacier County District Court judgment that the Blackfeet Tribe is entitled to enforce a tribal court judgment as a matter of comity, and that the Robertsons are entitled to recover certain cattle pasturage fees from the Wipperts. The Wipperts contend that the Tribe cannot enforce its tribal court judgment by filing a notice of that judgment as a lien in the District Court, and that it cannot be tacitly implied that the Wipperts, as assignors of the right to recover the pasturage fees, guaranteed that their assignee would pay those fees. We agree, and hold that a tribal court judgment can only be enforced in Montana courts by the institution of a special proceeding or action, but that the Tribe is entitled to enforcement of its judgment because the Wipperts themselves instituted an action to determine the validity of the judgment. We remand, however, for further consideration of whether the trial court determined the correct amount remaining unsatisfied on the judgment, and for amendment of the District Court judgment to provide that the Wipperts are not liable to the Robertsons for pasturage fees because the Wipperts assigned their right to those fees to the Robertsons without guaranteeing that the Wipperts would pay them.

Prior to July 1, 1976, the Wipperts, adult Blackfeet tribal members, owned 2,427 acres in Glacier County, Montana, known as the Stone Ranch. In 1974, the Blackfeet Tribe loaned the Wipperts $46,773.28 due and payable to the Tribe with 10 percent interest not later than November 1, 1975. After the Wipperts defaulted on the loan, the Tribe obtained a $46,773.28 judgment (plus interest) against them in the

Blackfeet Tribal Court on April 15, 1976. On April 21, 1976, the Tribe filed a notice of this judgment with the Glacier County Clerk and Recorder and the Glacier County District Court.

In June 1976, the Wipperts agreed to sell the Stone Ranch to the Robertsons and agreed to provide the Robertsons with a title insurance policy showing that the property was free and clear of all liens and encumbrances. When the title insurer discovered the Tribe's notice of judgment, the Robertsons refused to accept title. In order to assure the Robertsons that this notice of judgment would be cleared from the title, it was agreed that $20,000 of the purchase price would be kept in escrow with the title insurance ". . . to cover the amount still remaining and unpaid to the Blackfeet Tribe [by] the Wipperts.. . . Upon release of the judgment, the amount held in escrow, together with the interest thereon, shall be paid to [the Wipperts].. . ." It was also provided that if necessary to clear the judgment from the title, the escrow funds could be used to pay the judgment.

Before June 1976, the Wipperts had agreed that Mrs. Wippert's brother, Larry Whitford, could put his cows to pasture on the Stone Ranch from June through October 1976 for $3,000 per month. The Wipperts and Robertsons then made a written, supplemental agreement that the Robertsons would honor the buy-sell agreement, abide by the terms of the pasturage agreement, and defer possession of the Stone Ranch until October 1, 1976, in exchange for $12,000 of the pasturage fee.

On July 1, 1976, the Wipperts conveyed the Stone Ranch to the Robertsons by warranty deed. Almost a year later, on

June 29, 1977, the Wipperts filed a complaint against the Robertsons and the Tribe, requesting that the Tribe set forth the nature of its claims to both the Stone Ranch and the escrow funds and that the court declare that the Tribe has no interest in or lien on either one. The Wipperts specifically requested that the court adjudicate the rights of all the parties in regard to the escrow funds.

The Wipperts also moved the court to strike the Tribe's notice of judgment from the court records on the ground that it was not a document entitled by law to be placed on the records. The court granted this motion to strike, but a copy of the notice of judgment remained on record as a lis pendens in the Glacier County Clerk and Recorder's Office.

The Tribe counterclaimed for $17,171.55 (the amount allegedly remaining unpaid on the tribal court judgment) and asked that this amount be taken out of the escrow funds held specifically for the purpose of satisfying that part of the tribal court judgment which remained unpaid.

The Robertsons also counterclaimed and requested that $10,500, the amount allegedly remaining unpaid under the supplemental agreement relating to deferring possession and obtaining $12,000 of the pasturage fees, be awarded them from the escrow funds.

The trial court ruled in favor of both the Tribe and the Robertsons on their counterclaims. The court held that the tribal court judgment was entitled to full faith and credit as a matter of comity, regardless of whether the Tribe had a valid lien against the Wipperts' property. On the Robertsons' counterclaim the trial court ruled that the supplemental agreement was more than a mere assignment of their right to the Robertsons to receive the pasturage

-4-

fees paid by Larry Whitford for the use of the pasturage from June to October of 1976. Rather, the court held that the Wipperts had breached the supplemental agreement by not paying the $12,000 to the Robertsons.

The court held that because the Wipperts had asked it to adjudicate the rights of all the parties and to quiet title to the escrow funds, section 70-2-202, MCA (procedural provisions applicable to quiet title actions), authorized the use of the escrow funds to satisfy both the Tribe's and the Robertsons' judgments. The Wipperts appeal.

The Wipperts first contend that the judgment in favor of the Tribe on its counterclaim is not supported by any evidence that the Tribe possessed a valid lien against the Stone Ranch. Although we agree that the Tribe did not have a lien against the property, we also hold that the Wipperts, in their escrow agreement, agreed that the escrow funds could be used to satisfy any remaining tribal court judgment. The Wipperts, by this same agreement, also invited the Tribe to institute special proceedings to establish the validity of the tribal court judgment.

Tribal court judgments are treated with the same deference shown decisions of foreign nations as a matter of comity. Hilton v. Guyot (1895), 159 U.S. 113, 163-64, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108; In re Marriage of Limpy (1981), ___ Mont. ___, 636 P.2d 266, 38 St.Rep. 1885; State ex rel. Stewart v. District Court (1980), ___ Mont. ___, 609 P.2d 290, 37 St.Rep. 635; Red Fox and Red Fox (Ore.App. 1975), 542 P.2d 918; Wakefield v. Little Light (1975), 276 Md. 333, 347 A.2d 228; In Re Lynch's Estate (1962), 92 Ariz. 354, 377 P.2d 199; Begay v. Miller (1950), 70 Ariz. 380, 222 P.2d 624. However, there is no Montana law which

allows a tribe or foreign nation to place a lien against property situated in Montana by filing a notice of judgment with a Montana court. We do not even allow this for judgments rendered by our sister states; that is, to enforce a judgment rendered in a foreign country or another state, an action or a special proceeding must be instituted in the District Court of the county where the judgment is sought to be enforced. See section 26-3-203, MCA. Therefore, the District Court properly ordered the Tribe's notice of judgment be stricken from the court's records, and it was correct in declaring that it did not constitute a lien against the Wipperts' property.

Once a party files an action or a special proceeding to enforce a tribal or foreign judgment against a person, section 26-3-205(2), MCA authorizes, courts of this state to presume that the tribal or foreign judgment ". . . is evidence of a right as between the parties . . . and can only be repelled by evidence of a want of jurisdiction, want of notice to the party, collusion, fraud, or clear mistake of law or fact."

But here the Tribe failed to file an action or special proceeding to enforce its judgment. Rather, the Wipperts themselves filed that action for the Tribe when they filed their complaint requesting that the Tribe set forth the nature of its claims and that the court decide the rights of all the parties. These requests laid the foundation for the court's inquiry into the validity of the tribal court judgment. Although the Wipperts alleged in their pleadings that the tribal court judgment was obtained by fraud, they offered no proof of fraud at any time.

-6-

Nonetheless we must remand for a determination of the proper amount of the tribal court judgment. The Wipperts have vaguely alleged in their briefs that the trial court may have made a factual mistake in determining the unsatisfied amount of the tribal court judgment. The Wipperts appear to argue that the tribal court judgment was partially satisfied because the Tribe confiscated certain lands and cattle which had been pledged as collateral for the loan. In addition, in determining the amount of the unsatisfied judgment, the trial court merely asked counsel for the tribe to submit the figure to the court, and the court simply adopted the figure submitted by the Tribe. The trial court made no independent determination of the correctness of the amount. Under these circumstances we can indulge in no presumption that the District Court judgment is correct. In all fairness, we must remand for a hearing to determine the proper amount of the judgment.

We also hold that the trial court was correct in allowing the Tribe to satisfy the unpaid portion of its judgment from the escrow funds. The Wipperts' written escrow agreement specifically provided that ". . . the sum of $20,000.00 . . . will be held in an interest bearing escrow account . . . to cover the amount still remaining and unpaid to the Blackfeet Tribe [by] the Wipperts.. . . Upon release of the judgment, the amount held in escrow . . . shall be paid to . . . [the Wipperts]. If necessary in order to clear the judgment . . . the escrow funds [may be used] to pay off the judgment and obtain a release of said judgment . . ."

As to the Robertsons' counterclaim asking that the escrow money be applied to pay them under the terms of the supplemental agreement, the Wipperts correctly claim that the Robertsons have no right to the proceeds of the escrow

-7-

fund because the Wippert-Robertson supplemental agreement clearly provided that the Robertsons were to receive the pasturage fee from Larry Whitford and not from the Wipperts. We agree that the supplemental agreement was an assignment of the Wippert rights to the pasturage fees to the Robertsons. That agreement states:

> "It is understood that you, the Buyer, will fulfill and carry out completely the terms of this summer pasturage agreement commencing with July 1, 1976, and that <u>you will be entitled</u> to <u>payment</u> <u>from</u> <u>Larry Whitford</u> of the remaining $12,000 . . ." (Emphasis added.)

This is clearly an assignment which contains no language creating an indebtedness between the Wipperts and the Robertsons. Contrary to the trial court's holding that the Wipperts should have clearly indicated their intentions to assign by using customary words of assignment, the law does not require that any special language be used to constitute a written assignment. Any language, however informal or poorly expressed, is sufficient if it shows an intent to transfer a right. See 6A C.J.S. <u>Assignments</u> § 43(b); Bergin v. Van Der Steen (Cal. 1951), 236 P.2d 613; Morris v. Leach (Ore. 1917), 162 P. 253; Title Ins. & Trust Co. v. Williamson (Cal.App. 1912), 123 P. 245; Porter v. Title Guaranty & Surety Co. (Idaho 1912), 121 P. 548; Levins v. Stark (Ore. 1910), 110 P. 980; Galbreath v. Wallrich (Colo. 1909), 102 P. 1085. And an assignment may be limited by conditions contained therein. Northwest Oil & Refining Co. v. Honolulu Oil Corp. (1961), 195 F.Supp. 281.

We hold that the language stating that ". . . you will be entitled to payment from Larry Whitford . . ." was sufficient to show a present intent to transfer. It is an established rule of contract law that the assignor does not guarantee that the obligor will pay, and that the assignor

-8-

is not liable to the assignee for breaches of the assignment by the debtor. Restatement of the Law of Contract § 175; 6A C.J.S. Assignments § 90; Patrons State Bank & Trust Co. v. Shapiro (Kans. 1974), 528 P.2d 1198; First National Bank of Topeka v. United Telephone Ass'n. (Kan. 1960), 353 P.2d 963; Robinson v. St. Maries Lumber Co. (Idaho 1921), 204 P. 671; Galbreath, supra. Therefore, we will not imply that the Robertsons may recover the unpaid pasturage fee from the Wipperts; any recovery must be sought from Larry Whitford.

We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:


_____
Chief Justice

_____

_____

_____
Justices

_____
Hon. Peter Meloy, District
Judge, Sitting for Mr.
Justice John C. Sheehy

-9-

Chief Justice Frank I. Haswell concurring in part and dissenting in part:

I dissent from that portion of the foregoing opinion which determines that a remand to the District Court is necessary for a redetermination of the correctness of the figure representing the unsatisfied portion of the tribal court judgment.

Particularly, I take issue with the following language in the majority opinion:

> ". . . In addition, in determining the amount of the unsatisfied judgment, the trial court merely asked counsel for the tribe to submit the figure to the court, and the court simply adopted the figure submitted by the Tribe. The trial court made no independent determination of the correctness of the amount. Under these circumstances we can indulge in no presumption that the District Court judgment is correct. In all fairness, we must remand for a hearing to determine the proper amount of judgment."

It is well-settled law in Montana that District Court judgments are presumed to be correct. Toeckes v. Baker (1980), ____ Mont. ___, 611 P.2d 609, 37 St.Rep. 948; Rock Springs Corporation v. Pierre (1980), ___ Mont. ___, 615 P.2d 206, 37 St.Rep. 1378. The majority have assumed that because the District Court asked the tribe's counsel to compute the amount owing on the judgment and submit that figure to the court, the District Court did not verify the figures so submitted prior to signing the judgment. I find nothing in the record to support this assumption and, therefore, dissent from the majority's action in remanding this case for that purpose.

I concur in the remainder of the majority opinion.

_____
Chief Justice

-10-