Mary Jane WILSON, Plaintiff,

v.

Thomas David MARCHINGTON and Inland Empire Shows, Inc., Defendants.

No. CV–92–127–GF.

United States District Court, D. Montana, Great Falls Division.

Jan. 24, 1996.

Cameron Ferguson, Hartelius, Ferguson, Baker & Kazda, PC, Great Falls, MT, for Mary Jane Wilson.

William O. Bronson, James, Gray & McCafferty, PC, Great Falls, MT, for Thomas David Marchington, Inland Empire Shows, Inc.

Joseph P. Mazurek, Office of Montana Attorney General, Helena, MT, for State.

Maxon R. Davis, Paul R. Haffeman, Davis, Hatley, Haffeman & Tighe, PC, Great Falls, MT, for Glacier Electric Cooperative, Inc.

### MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

The plaintiff, Mary Jane Wilson, an enrolled member of the Blackfeet Indian Tribe, filed suit in the Blackfeet Tribal Court, seeking compensatory and punitive damages based upon the defendants' purported negligence in the operation of a semi-tractor trailer on U.S. Highway 2, within the exterior boundaries of the Blackfeet Indian Reservation. The defendants are not members of the Blackfeet Indian Tribe, nor do they reside or conduct any business activity within the exterior boundaries of the Blackfeet Indian Reservation. The defendants entered an appearance in Tribal Court, specifically reserving the right to contest all jurisdictional issues in federal court. The action was ultimately tried before the Blackfeet Tribal

Court with a jury finding the defendants liable for the accident, and awarding plaintiff damages of $246,100.

Wilson instituted the present action requesting the court to "recognize and register the Tribal Court Judgment." Wilson invoked both the diversity jurisdiction and federal question jurisdiction of this court. In relation to the latter invocation of jurisdiction, Wilson asserted the action was prosecuted under the Full Faith and Credit Clause of the United States Constitution. Proceedings in this action were originally stayed pursuant to motion of the defendants, pending disposition of the defendants' appeal in the Blackfeet Tribal Court system. On July 1, 1994, the Blackfeet Supreme Court entered its decision, affirming the original Judgment in favor of Wilson and against the defendants. Subsequently, the matter was presented for determination before this court upon the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.

The principal issue presented for resolution was whether the Blackfeet Tribal Court was vested with subject matter jurisdiction to adjudicate the underlying controversy. Having concluded the Blackfeet Tribal Court was vested with jurisdiction to adjudicate the controversy, the court granted the plaintiff's motion for summary judgment. A correlative issue inherent in the parties' respective motions, however, was whether the judgment of the Blackfeet Tribal Court is entitled to be given full faith and credit in this court. The parties have moved the court to amend the judgment entered for the purpose of addressing this specific issue.

■ The issue of whether federal courts and the courts of the several states must extend full faith and credit to the judgment of a tribal court has been the subject of significant academic discussion [1] and substantial dispute among the courts. *See, e.g., Brown v. Babbitt Ford, Inc.,* 117 Ariz. 192, 571 P.2d 689 (Ct.App.1977) (Navajo Tribe is not a "territory" or possession within the meaning of 28 U.S.C. § 1738); *Sengstock v. San Carlos Apache Tribe,* 165 Wis.2d 86, 477 N.W.2d 310 (Ct.App.1991) (Tribe not a "state" under 28 U.S.C. § 1738, but recognizing judgment enforceable under principles of comity); *compare, Jim v. C.I.T. Financial Services Corp.,* 87 N.M. 362, 533 P.2d 751 (1975) (laws of Navajo Nation are entitled to full faith and credit under territorial provision of 28 U.S.C. § 1738; *Sheppard v. Sheppard,* 104 Idaho 1, 655 P.2d 895 (1982) (phrase "Territories and Possessions," as used in 28 U.S.C. § 1738, is broad enough to include Indian Tribes thereby affording judicial proceedings of Tribal Courts full faith and credit in "every court within the United States.").[2] Wilson, in talismanic fashion, cites the court to those decisions wherein the court has either afforded full faith and credit to the judicial proceedings of a tribal court or extended comity to the judgment of a tribal court. The defendants, in turn, offer limited analysis upon the issue of the propriety of this court affording full faith and credit to the judgment entered by the Blackfeet Tribal Court in the underlying action or extending comity to the judgment. Rather, the defendants implore the court to simply declare that it will not enforce the Tribal Court Judgment as a matter of full faith and credit or comity upon the following two grounds:

(1) the Tribal Court lacked subject matter jurisdiction over the underlying controversy; and

(2) the defendants were not afforded due process of law at either the trial or appel-

---

1. *See, e.g.,* Clinton, *Tribal Courts and the Federal Union,* 26 Willamette L.Rev. 841, 902–08 (1990); Vetter, *Of Tribal Courts and "Territories": Is Full Faith and Credit Required?,* 23 Cal W.L.Rev. 219, 224–34 (1987).

2. The "Full Faith and Credit Clause" of the United States Constitution refers, of course, only to the judicial proceedings of States. Art. IV, § 1, United States Constitution. The statutory Full Faith and Credit Clause, 28 U.S.C. § 1738, requires federal courts to give full faith and credit to "judgments of any court of any such State, Territory, or Possession." Some State courts, like the State of Montana, have recognized that principles of comity, as opposed to the Full Faith and Credit Clause of 28 U.S.C. § 1738, determines whether the Judgment of a Tribal Court is entitled to be enforced in the courts of the State. *See, Wippert v. Blackfeet Tribe,* 201 Mont. 299, 654 P.2d 512 (1982); *see also,* FELIX S. COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, 385 (R. Strickland Ed.1982).

late level of the Blackfeet Tribal Court system.[3]

The State of Montana and Glacier Electric Co-Operative, Inc., appearing as *amici curiae*, adopt the position this court must apply Montana law with respect to the recognition or enforcement of the Tribal Court Judgment.[4]

■ The court, constrained by the holding in *Hinshaw v. Mahler*, 42 F.3d 1178 (9th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 485, 130 L.Ed.2d 398 (1994), previously concluded in its Memorandum and Order of November 8, 1995, that the Blackfeet Tribal Court was vested with jurisdiction to adjudicate the underlying action. Having determined the Tribe possessed civil-adjudicatory jurisdiction over a negligence action involving a non-tribal member, a non-resident of the

reservation, it would be incongruous for the court to hold the judgment entered by the Blackfeet Tribal Court is not entitled to recognition and enforcement outside the boundaries of the reservation. While the court rejects the notion that 28 U.S.C. § 1738 includes Indian Tribes,[5] the court must conclude that principles of comity control whether the judgment of a tribal court is entitled to recognition and enforcement in this court. *See*, FELIX S. COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, 385 (R. Strickland Ed.1982).[6] The more perplexing question, however, is the question of what is the appropriate jurisdictional basis upon which this court may recognize and enforce a tribal court judgment.

In *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105

---

3. The limited argument presented by the defendants in relation to their assertion of denial of due process of law during the course of the Blackfeet Tribal Court proceedings references both the United States Constitution and the Indian Civil Rights Act (25 U.S.C. § 1302 *et seq.*). In that regard, it is imperative to note that in view of the status of Indian Tribes as *quasi* sovereign nations, neither the rights guaranteed by the Bill of Rights or the Fourteenth Amendment to the United States Constitution are applicable to Indian Tribes or their courts. *See, Talton v. Mayes*, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The power of the Indian Tribes to govern their own affairs is limited only by Treaty and the plenary power of Congress. *Winton v. Amos*, 255 U.S. 373, 41 S.Ct. 342, 65 L.Ed. 684 (1921). In the exercise of that plenary power, Congress, in 1968, enacted the Indian Civil Rights Act statutorily restricting the governmental powers of tribal governments in guaranteeing certain rights to those individuals falling within the jurisdiction of the Tribes. 25 U.S.C. § 1302. Congress enacted the Indian Civil Rights Act to protect the rights of all individuals from arbitrary and unjust actions of tribal governments. *See, Martinez*, 436 U.S. at 61, 98 S.Ct. at 1678 (*quoting*, S.Rep. No. 841, 90th Cong., 1st Sess. 506 (1967)). *See also, White v. Pueblo of San Juan*, 728 F.2d 1307, 1312, n. 1 (10th Cir.1984).

4. *Amici curiae* accurately note Montana has adopted two statutes with respect to the recognition or enforcement of foreign judgments, *i.e.*, the Uniform Enforcement of Foreign Judgments Act (Mont.Code Ann. §§ 25–9–501 through 508 (1993)), and the Uniform Foreign Money—Judgments Recognition Act (Mont.Code Ann. §§ 25–9–601 through 609 (1993)). *Amici curiae* argue the former statute is inapplicable because Tribal

Court Judgments are not entitled to full faith and credit as a matter of state law or under 28 U.S.C. § 1738. *See, Wippert, supra*, 654 P.2d at 515. The latter statute, *amici curiae* suggest, is also inapplicable because the statute, which became effective in 1993, post-dated the date of the underlying accident (the accident occurred on July 17, 1989, and the Judgment was entered on July 2, 1992). Consequently, *amici curiae* contend the propriety of the recognition and enforcement of the Blackfeet Tribal Court judgment in this court is controlled by the pre–1993 standards as applied in *Wippert*, standards which recognize that enforcement of a foreign judgment can be defeated by evidence of want of jurisdiction, want of notice to the party, collusion, fraud, or even "clear mistake of law or fact." *Wippert*, 654 P.2d at 515, *quoting*, Mont.Code Ann. § 26–3–205(2).

5. The court remains mindful of the existence of language in early United States Supreme Court cases suggesting tribal court judicial proceedings are entitled to full faith and credit under 28 U.S.C. § 1738, *see, United States ex rel Mackey v. Coxe*, 59 U.S. (18 How.) 100, 103, 15 L.Ed. 299 (1856); *Holden v. Joy*, 84 U.S. (17 Wall) 211, 247, 21 L.Ed. 523 (1872), but no definitive decision upon the issue has been rendered by the United States Supreme Court or the Ninth Circuit Court of Appeals.

6. A review of the decisional law relative to the recognition of tribal court judgments outside the boundaries of the reservation reveals that the federal courts have not dealt with full faith and credit and comity issues between tribal courts and federal and state courts in an in-depth manner. *See*, NICHOLAS J. SPAETH, et al., AMERICAN INDIAN LAW DESKBOOK, 147–50 (1993).

S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Supreme Court concluded the existence of tribal court jurisdiction presented a federal question within the scope of 28 U.S.C. § 1331. 471 U.S. at 852, 105 S.Ct. at 2451; *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 15, 107 S.Ct. 971, 976, 94 L.Ed.2d 10 (1987). Specifically, the Court stated as follows:

> The question whether an Indian Tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a "federal question" under section 1331. Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. They have, therefore, filed an action 'arising under' federal law within the meaning of section 1331.

471 U.S. at 852–53, 105 S.Ct. at 2452 (footnote omitted).

In view of the fact the petitioners in *National Farmers* were seeking to assert the right to be protected against an unlawful exercise of tribal court judicial power, a question exists as to whether the exercise of the "right" identified by the Court in *National Farmers* is critical to the invocation of federal question jurisdiction under section 1331 in an action seeking a determination of the existence of tribal court jurisdiction over a civil controversy. The question is of paramount importance in the present case for two reasons. First, as an alternative basis for jurisdiction, Wilson invokes the federal question jurisdiction of this court seeking a determination that the Blackfeet Tribal Court retained the power to compel a non-member tortfeasor to submit to the civil jurisdiction of the Tribal Court.[7] Second, the issue of tribal court jurisdiction over the underlying controversy is inextricably intertwined with the question of whether Wilson can seek to obtain recognition and enforcement of the Blackfeet Tribal Court judgment in a forum outside the boundaries of the Blackfeet Indian Reservation. The defendants, adopting the position advocated by the *amici curiae,* assert that the only jurisdictional basis, if any, upon which this court could consider recognizing and enforcing the Tribal Court Judgment would be diversity of citizenship. If the defendants are correct in this assertion, then the court would be bound to apply the substantive law of Montana relevant to the recognition and enforcement of the judgment as enunciated in *Wippert v. Blackfeet Tribe, supra.*[8]

■ The determination of the basis upon which this court properly asserts jurisdiction over this action is of significance since it bears upon the question of whether federal or state law governs the recognition and enforcement of a tribal court judgment.[9] In view of the unique status occupied by Indian Tribes under our law, *see, National Farmers,* 471 U.S. at 851, 105 S.Ct. at 2451, it is, in the opinion of this court, imperative, not only that a uniform body of law develop in relation to the recognition and enforcement of civil

7. In its Memorandum and Order of November 8, 1995, the court concluded the issue of whether the Blackfeet Tribal Court possessed subject matter jurisdiction over the activities of the non-Indian defendants presented a "federal question" within the meaning of 28 U.S.C. § 1331.

8. *See, Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that, in diversity cases, a federal district court is bound to follow the conflict of laws rule for the State in which the district court is located).

9. The law which has developed in relation to the recognition and enforcement of a civil judgment rendered in a foreign nation illustrates this point. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 98 comment (1971 Rev.) notes the Supreme Court of the United States has never passed upon the question whether federal or state law governs the recognition of foreign nation judgments, but suggests it is probable that "federal law would be applied to prevent application of a State rule on the recognition of foreign nation judgments if such application would result in the disruption or embarrassment of the foreign relations of the United States," and cites *Zschernig v. Miller,* 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968). There exists authority among the lower federal courts, however, suggesting that under the rule of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the substantive law of the forum state would control the recognition and enforcement of a foreign nation judgment. *See, e.g., Svenska Handelsbanken v. Carlson,* 258 F.Supp. 448 (D.Mass.1966).

judgments rendered in the various tribal courts, but that issues relating to the recognition and enforcement of the judgments be resolved in accordance with federal law. In this fashion, disruption of the relationship between the various Indian Tribes and the United States will be avoided. Recognition of the existence of federal question jurisdiction over an action prosecuted for the purpose of seeking recognition and enforcement of a tribal court judgment is compelled by the relationship extant between the United States and the various Indian Tribes.[10] The court affirms its conclusion that an action prosecuted for the purpose of seeking recognition and enforcement of a judgment entered by an Indian tribal court presents a "federal question" within the meaning of 28 U.S.C. § 1331. Accordingly, the substantive law to be applied in determining the defenses available to the recognition and enforcement of a tribal court judgment is federal in nature.

■ The field of conflict of laws, of which the concepts of full faith and credit and choice of law are a part, *see,* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 1, 2 (1971), has its origin in international law. *See, Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). In relation to the recognition of a foreign nation judgment in the federal courts, the United States Supreme Court in *Hilton v. Guyot, supra,* observed that such a judgment would not be recognized in the United States unless the American court is convinced that the forum court had jurisdiction and that the following conditions were generally satisfied:

> There has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment. . . .

*Hilton v. Guyot,* 159 U.S. at 202, 16 S.Ct. at 158 (1895).

---

**10.** Article III of the Constitution extends the judicial power of the federal courts to "all Cases in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority. . . ." U.S.CONST. ART. III, § 2. "[This] grant of power, however, is not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 807, 106 S.Ct. 3229, 3231–32, 92 L.Ed.2d 650 (1986). The Court in *Merrell Dow* further observed that "although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 823–824 [6 L.Ed. 204] (1824), we have long construed the statutory grant of federal question jurisdiction as conferring a more limited power." *Id.* (citations omitted).

The present case is not one in which federal law has created the cause of action but this fact is not determinative of the existence of federal question jurisdiction. *Id.,* at 808, 106 S.Ct. at 3232. In that regard, the following observations offered by the Court in *Merrell Dow* are instructive:

> In undertaking this inquiry into whether jurisdiction may lie for the presence of a federal issue in a non-federal cause of action, it is, of course, appropriate to begin by referring to our understanding of the statute conferring federal-question jurisdiction. We have consistently emphasized that in exploring the outer reaches of section 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, the judicial power, and the federal system. 'If the history of the interpretation of judiciary legislation teaches us anything, it teaches the duty to reject treating such statute as a wooden set of self-sufficient words . . . The Act of 1875 is broadly phrased, but it has been continuously construed and limited in light of the history that produced it, the demands of reason and coherence, and the dictates of sound judicial policy which have emerged from the Act's function as a provision in the mosaic of federal judiciary legislation.' (citations omitted). In *Franchise Tax Board [v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)], we forcefully reiterated this need for prudence and restraint in the jurisdictional inquiry: 'We have always interpreted what *Skelly Oil [Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 673, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950)], called 'the current of jurisdictional legislation since the Act of March 3, 1875' . . . with an eye to practicality and necessity." 463 U.S. at 20 [103 S.Ct. at 2851].
478 U.S. at 810, 106 S.Ct. at 3233.

This court must draw upon the observations offered by the Supreme Court in *Hilton* in determining the defenses available to a party seeking to defend against the recognition and enforcement of an Indian tribal court judgment where, as in the present case, it has been determined that the tribunal which rendered the judgment possessed adjudicatory jurisdiction over the underlying controversy. The only defense asserted by the defendants is that the Blackfeet Tribal Court did not afford them "due process of law" at either the trial or appellate level.[11] Cognizant of the fact the various Indian tribes are not constrained by the rights guaranteed by the Bill of Rights or the Fourteenth Amendment to the United States Constitution, *see*, fn. 3, *supra*, this defense is properly viewed as one embodying the contention that the defendants were not provided adequate notice of the tribal court proceeding or an adequate opportunity to be heard. *See, generally*, RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 92 and 104.

■ In determining whether the principle of comity dictates that this court afford the Blackfeet Tribal Court judgment, at issue, full effect, the court again bears in mind the observations of the Supreme Court in *Hilton*:

> The merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact. The defendants, therefore, cannot be permitted, upon that general ground, to contest the validity or the effect of the judgment sued on.

*Hilton v. Guyot*, 159 U.S. at 202–03, 16 S.Ct. at 158. In that regard, the mere fact the procedures employed by a foreign court do not embody the same safeguards recognized as inherent in the Due Process Clause of the United States Constitution is *not, in and of* itself, a sufficient ground for impeaching the foreign judgment. *Hilton v. Guyot*, 159 U.S. at 204–05, 16 S.Ct. at 159.

The defendants cite no less than 20 errors they allege were committed by the trial court, the singular and cumulative impact of which purportedly operated to deprive the defendants of "due process". The court need not detail the purported errors as the majority relate to matters of discovery, evidence, and argument of counsel. The purported errors, even on a cumulative basis, do not suggest prejudice in the Blackfeet Tribal Court, or in the system of laws of the Blackfeet Indian Tribe. Accordingly, the objections are insufficient to impeach the judgment under scrutiny.

Therefore, IT IS HEREBY ORDERED that the defendants' motion requesting the court, pursuant to Fed.R.Civ.P. 59(e), to amend the judgment entered on November 8, 1995, is granted, to the extent the judgment shall be amended to reflect the motion for summary judgment presented by the defendants is, in all respects, denied.

IT IS FURTHER ORDERED that the plaintiff's corresponding motion requesting the court to amend the judgment is granted to the extent the judgment shall be amended to reflect that the Blackfeet Tribal Court judgment entered in the underlying action is entitled to recognition and enforcement in accordance with applicable federal law.